UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| KIMBERLY LOCKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:12-cv-04062-SLD |
| | ) |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

ORDER

Plaintiff Kimberly Lockett filed a claim for Disability Insurance Benefits on October 31, 2008. After Lockett's claim was denied, she appeared before an Administrative Law Judge ("ALJ") for a hearing. The ALJ issued an unfavorable decision on January 13, 2011. Lockett now seeks review of the ALJ's final decision.

This matter is now before the Court on Lockett's Motion for Summary Judgment, ECF No. 10, and the Commissioner's Motion for Summary Affirmance, ECF No. 13. For the reasons described below, Lockett's Motion for Summary Judgment, ECF No. 10, is GRANTED, and the Commissioner's Motion for Summary Affirmance, ECF No. 13, is DENIED. This case is REMANDED to the Administrative Law Judge for further proceedings consistent with this opinion.

BACKGROUND

Lockett allegedly suffers from substance abuse, obesity, dysfunction of the right hand and has a history of bipolar disorder and ADHD. While the ALJ determined that these impairments were all severe, the ALJ found that Lockett had the capacity to perform jobs that do not require more than assistive use of the right hand and do not require detailed or complex job processes.

Lockett's application was therefore denied and this appeal followed. Lockett's arguments and all relevant medical evidence will be discussed below as needed.

## DISCUSSION

I. **Legal Framework**

   A. **District Court Review of the ALJ Decision**

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Rather, the ALJ's decision must "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and . . . to enable us to trace the path of [their] reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Id.* "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and

explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003)).

## B. Entitlement to Benefits

In order to be entitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"), a plaintiff must show that her inability to work is medical in nature and that she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Social Security Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382(c)(a)(3)(A).

Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 615 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the plaintiff:

1) Did not perform, during the relevant time period, any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

> 5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 will require the ALJ to make a finding about the plaintiff's Residual Function Capacity ("RFC") based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is then used at steps 4 and 5 to determine whether the plaintiff can perform past relevant work or can adjust to other work, respectively. *Id.*

The plaintiff has the burden of production and persuasion at steps 1 through 4. But once the plaintiff shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the plaintiff is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252-53 (7th Cir. 1985).

## II. Analysis

### A. The ALJ's RFC Determination

Lockett's appeal is based on her claim that the ALJ's RFC determination was flawed. An RFC determination is an assessment of what work-related activities the claimant can still perform despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must consider all relevant evidence in the record when determining a claimant's RFC, not just severe impairments. *See id.* "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

In this case, the ALJ determined that Lockett had the RFC "to perform a full range of work at all exertional levels." R. at 20. The ALJ also included the following nonexertional limitations in Lockett's RFC:

> Due to dysfunction of her right hand (the claimant is left handed), the claimant is limited to jobs that do not require climbing ladders, ropes, scaffolds, or work at unprotected heights, and jobs that do not require fine manipulation with the right hand, or more than assistive use of the right hand or a grip greater than 1/5 in the right hand. Due to all her mental symptoms combined, the claimant is limited to jobs that do not require detailed or complex job processes.

R. at 20-21.

Lockett argues that the ALJ erred when assessing her RFC. Lockett alleges the ALJ's RFC: 1) contradicts the findings of the state agency physicians; 2) failed to adequately consider the effects of Lockett's obesity on her ability to function; and 3) failed to properly include functional limitations due to Lockett's dysfunctional right hand. The Court will now consider each of these allegations.

### 1. While the ALJ's RFC determination contradicts the findings of the state agency physicians, this contradiction is a harmless error.

Lockett argues that the ALJ ignored testimony from Dr. Bilinsky in determining that Lockett should have no exertional limitations. Specifically, Dr. Bilinsky concluded, upon examining Lockett, that she should have the exertional limitations of occasionally lifting or carrying no more than twenty pounds and frequently lifting or carrying no more than ten pounds. R. at 266. This description is consistent with the exertional limitation defined as "light work." SSR 83-10, 1983 WL 31251 at *5 (Jan. 1, 1983) ("The regulations define light work as lifting no more than 20 pounds at a time and frequent lifting or carrying of objects weighing up to 10 pounds."). Yet the ALJ concluded that Lockett could "perform a full range of work at all exertional levels." R. at 20. Lockett claims that this conclusion was insufficiently addressed by

5

the ALJ's "conclusory" explanation, which simply states that this RFC was "based on all the evidence of record." Mem. in Supp. of Pl.'s Mot. for Summ. J. at 10, ECF No. 10-1. Lockett argues that such a conclusory statement violates the ALJ's duty to "build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Additionally, Lockett argues that the ALJ's opinion fails to state her reasoning "in a manner sufficient to permit an informed review." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

The Commissioner rebuts by claiming that the ALJ's failure to include an exertional limitation was harmless error. The Commissioner claims that even if the case was remanded and the ALJ determined that Lockett should have been limited to light work, the result would be the same. To support this, the Commissioner points out that the ALJ listed four light exertion jobs which are sufficient to support the ALJ's ultimate conclusion "that Lockett could perform a significant number of jobs in the national economy." Def.'s Br. at 5, ECF No. 14. This conclusion would answer step five of our analysis in the negative and lead to the conclusion that Lockett is not disabled. Def.'s Br. at 5, ECF No. 14.

The principle of harmless error requires the Court to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C.A. § 2111 (West 2013). The purpose of codifying harmless error was "to prevent appellate courts from becoming impregnable citadels of technicality." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). In determining whether an error is harmless, "the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet*, 78 F.3d at 309. Remanding the case simply because the ALJ failed to provide an exertional limitation is a fruitless endeavor

6

if an exertional limitation would not change the outcome of any reasonable ALJ's decision. The question becomes whether the error of omitting an exertional limitation was truly harmless.

The Court agrees with the Commissioner's analysis that the ALJ's omission of an exertional limitation was a harmless error. First, the ALJ erred. The ALJ should have either given Lockett an exertional limitation of light work consistent with Dr. Bilinsky's testimony, or supplied reasoning for why Dr. Bilinsky's testimony was discredited. But this error was harmless. If this case was remanded and the ALJ corrected this error by either adopting a light work exertional limitation or by supplying reasons for why Dr. Bilinsky's testimony should be discredited, neither of these alternatives would produce a different result. If Dr. Bilinsky's testimony was discredited, the ALJ's analysis would not change at all. Alternatively, if the ALJ established a light work exertional limitation, any reasonable ALJ would conclude that Lockett could perform the light work the ALJ listed in her opinion. The ALJ listed four light unskilled occupations that have a total of 22,179 jobs in Illinois and 7,015 jobs in Iowa. R. at 23. Any reasonable ALJ, considering case law, would conclude that these are a significant number of jobs in the national economy. *See Lee v. Sullivan*, 988 F.2d 789 (7th Cir. 1993) (citing various cases where courts concluded that 174 – 1,350 job positions were a "significant" enough for purposes of Step 5 analysis). Therefore, on remand, Lockett would still fail Step 5 and not be disabled.

### 2. The ALJ's RFC determination adequately considered the effects of Lockett's obesity on her ability to function.

Lockett argues the ALJ failed to adequately consider Lockett's obesity when determining her RFC. Lockett points out that the ALJ admitted that Lockett was obese and that her obesity was a "severe impairment." R. at 18. Later, the ALJ dismissed Lockett's obesity by stating that "[Lockett] has not demonstrated that her obesity would prevent her from performing work within the determined residual functional capacity." R. at 22. Lockett argues that this dismissal of her

7

obesity is inadequate and requires a more "accurate and logical bridge between the evidence and the result." ECF No. 10-1 (quoting *Sarchet*, 78 F.3d at 307).

While an ALJ is required to build an accurate and logical bridge between the evidence and the result, such bridge building need not be extensive when the gap between the evidence and the result is either minimal or nonexistent. The logical bridge required to span this gap has more recently been interpreted to require an ALJ to "rest its denial of benefits on adequate evidence contained in the record and . . . explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The problem for Lockett is that there is little or no evidence contrary to the ALJ's conclusion that "[t]he claimant has not demonstrated that her obesity would prevent her from performing work within the determined residual functional capacity." R. at 22.

By concluding that Lockett's obesity was a severe impairment, the ALJ was only finding that Lockett's obesity "significantly limits [her] ability to perform basic work activities." R. at 17. After finding obesity to be a severe impairment, an ALJ cannot summarily conclude that extreme or severe obesity makes a claimant disabled, but instead must "do an individualized assessment of the impact of obesity on an individual's functioning." SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). In this case, the ALJ assessed the impact of Lockett's obesity in her conclusion that Lockett failed to show that "her obesity would prevent her from performing work *within the determined residual functional capacity*." R. at 22 (emphasis added). As discussed above, the ALJ determined that Lockett could perform four light work occupations that do not require certain uses of her hands. The evidence on record supports the ALJ's conclusion that Lockett could perform these jobs despite her obesity. Dr. Taiwo evaluated Lockett and concluded that Lockett "is able to walk, stand, sit, bathe, and shop without difficulty," and noted

that Lockett "was able to get on and off the exam table with no difficulty" and "walk greater than 50 feet without support." R. at 238-39. Dr. Bilinsky confirmed Dr. Taiwo's opinion by concluding that Lockett could "walk greater than 50 feet without support, get on and off the exam table with no difficulty," and "[s]tand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday." R. at 266-67. The two doctors' opinions are consistent with what light work requires: "a good deal of walking or standing." SSR 83-10, 1983 WL 31251 at *5 (Jan. 1, 1983). Therefore, there was no gap for the ALJ to bridge between the evidence (e.g., doctors' opinions) and her conclusion. The only evidence that Lockett lists to support a reduced functional capacity due to her obesity is that she "had a BMI of 48," "did very little as for daily activities," "spent a large portion of a typical day lying down," and had "recurrent low back pain, possibly as secondary to obesity." ECF 10-1 at 11. But this evidence does little to undercut the ALJ's RFC determination. Lockett participates in few daily activities and spends most of a typical day lying down. This does not mean that she is incapable of doing otherwise. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."). The ALJ's conclusion concerning Lockett's obesity is supported by substantial evidence and must be upheld.

Furthermore, the ALJ properly considered obesity by making an ultimate conclusion that is consistent with Dr. Bilinsky's opinion. Dr. Bilinsky considered Lockett's obesity during his evaluation of Lockett's health and exertional limitations. R. at 266. In essence, Dr. Bilinsky did exactly what an ALJ is required to do: he "meaningfully consider[ed] the effect of [Lockett]'s obesity, individually and in combination with her impairments, on her workplace function." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503-04 (3d Cir. 2009). An ALJ gives proper

9

consideration to a claimant's obesity when they make a decision consistent with a physician who considered obesity in their determination of physical limitations. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [the claimant's] obesity . . . . Thus, although the ALJ did not explicitly consider [the claimant's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). The ALJ concluded that Lockett could perform four light work occupations—a conclusion that is consistent with Dr. Bilinsky's evaluation of Lockett's exertional limitations given her obesity. Therefore, the ALJ adequately considered Lockett's obesity.

### 3. The ALJ's RFC determination failed to include adequate functional limitations to account for Lockett's dysfunctional right hand.

Lockett argues that the ALJ erred when considering the functional limitations of Lockett's dysfunctional right hand. Specifically, Lockett argues that the ALJ failed to consider Lockett's severely limited ability to grossly manipulate objects with her right hand. ECF No. 10-1 at 13. Gross manipulation is the ability of an individual "to grasp, hold, and turn objects." SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). The ALJ's RFC limited Lockett to occupations that do not require fine manipulation with the right hand, but it failed to include any limitations concerning gross manipulation. R. at 20. The ALJ stated that "there is no objective evidence that [Lockett] would be unable to perform work within the residual functional capacity assessment regarding her right hand as an assist." R. at 21. Lockett argues that this is inconsistent with the testimony of Drs. Taiwo and Bilinsky. *See* R. at 241, 266. Lockett argues that the ALJ again failed to perform her duty to "build an accurate and logical bridge between the evidence and the result." ECF No. 10-1 at 14.

The ALJ's analysis concerning Lockett's right hand is very brief and overly simplistic. The ALJ is required "to articulate reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994). Here, an entire line of evidence shows that Lockett's right hand is of little or no use to her. Drs. Taiwo and Bilinsky found that Lockett was severely limited in nine areas of fine and gross manipulation and "had severe difficulty with fine and gross manipulations with the right hand." *See* R. at 241, 266. The ALJ gave only two reasons for why Lockett's right hand is not so severe an impairment: "Treatment notes regarding the claimant's right hand do not indicate that the claimant is as restricted to the use of her hand as alleged, and there is no objective evidence that she would be unable to perform work within the residual functional capacity assessment regarding her right hand as an assist." R. at 21. First, the ALJ cites treatment notes (Exhibits 16F and 18F) to support her conclusion that Lockett's arm is not so severely impaired. But these exhibits are either inapplicable or illegible. *Id*. Exhibit 16F is inapplicable because it concerns a treatment done on Lockett's left arm and has nothing to do with her right arm. R. at 444-46. Exhibit 18F is mostly illegible and concerns a cut on Lockett's right arm that occurred about two years after the initial injury that damaged her right hand flexor tendons. R. at 465-68. Yet, as far as the Court can make out, Exhibit 18F does not indicate whether Lockett is able to make use of her right hand. *Id*. Second, objective evidence shows that Lockett might not be able to perform work within the ALJ's determined RFC. Lockett's testimony and the reports from Drs. Taiwo and Bilinsky indicate that Lockett does have severe difficulty in both fine and gross manipulation with her right hand. The ALJ fails to articulate any reasons for concluding that this evidence may be ignored. The Court must remand the case to the ALJ so that she might give a better articulation of her reasoning or, if

need be, conduct more hearings and discovery to determine the extent of Lockett's inability to use her right hand.

Additionally, the ALJ's brief analysis in determining that Lockett is capable of performing light work occupations directly conflicts with Social Security Rulings. Light work "require[s] gross use of the hands to grasp, hold, and turn objects." SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). This requirement cannot be easily overlooked because "[a]ny limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." *Id*. Considering the impact of a claimant's limitation in her ability to grossly manipulate objects is given even greater importance when the claimant is limited to sedentary or light work. SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) ("As a general rule, limitations of fine manual dexterity have greater adjudicative significance—in terms of relative numbers of jobs in which the function is required—as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work."). Instead of conducting the in-depth analysis required, the ALJ simply stated that "there is no objective evidence that she would be unable to perform work within the residual functional capacity assessment regarding her right hand as an assist." R. at 21. Claimants like Lockett should be given a complete explanation for why they did not qualify for disability assistance. The ALJ's reasoning falls short in its specificity of articulating the reasons for why the impairments of Lockett's arm do not qualify Lockett for disability.

## CONCLUSION

For the reasons given above, Lockett's Motion for Summary Judgment, ECF No. 10, is GRANTED, and the Commissioner's Motion for Summary Affirmance, ECF No. 13, is

DENIED. This case is REMANDED to the Administrative Law Judge for further proceedings consistent with this opinion.

Entered this 25th day of July, 2013.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE